UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY FULLER and
CHRISTINE SKANDIS,

                   Plaintiffs,                Case No. 1:19-cv-28

v.                                      Hon. Hala Y. Jarbou

SELECT PORTFOLIO SERVICING, INC.,
JPMORGAN CHASE BANK, N.A., and
ORLANS PC,

                   Defendants.
_____/

## REPORT AND RECOMMENDATION

This *pro se* lawsuit is now before the Court on a motion to dismiss filed by defendants Orlans PC ("Orlans") (ECF No. 9) and a motion to dismiss filed by defendants Select Portfolio Servicing, Inc. ("SPS") and JPMorgan Chase Bank, N.A. ("Chase") (collectively referred to as the "Chase defendants") (ECF No. 11). The motions are unopposed.[1]

### I.      Background

*Pro se* plaintiffs Larry Fuller ("Fuller") and Christine Skandis ("Skandis") own certain property located at 312 Hoffman Street, Saugatuck, Michigan. Compl. (ECF NO. 1-1) at PageID.16. Skandis lives at the property subject to this lawsuit, while Fuller lives at 530 West

---

[1] W.D. Mich. LCivR 7.2(c) provides that, "Unless otherwise ordered, any party opposing a dispositive motion *shall*, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials." (emphasis added). A plaintiff's failure to file a response to a motion to dismiss can be deemed a waiver of opposition to the relief sought in the motion. *See Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 631-32 (W.D. Mich. 2015) (listing cases including *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir.2008) (holding that the defendant waived any argument on the issue by failing to oppose a motion to dismiss) and *Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) (affirming district court's grant of the defendant's unopposed motion to dismiss, and noting that "if a plaintiff fails to respond or otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion")).

South Street in Kalamazoo, Michigan.[2]  *Id*.  According to plaintiffs, the mortgage of the Saugatuck property "is in the name of LARRY FULLER."  *Id*.  Plaintiffs allege that in August 2016, SPS contacted Fuller by telephone and invited him to participate in a loan modification to reduce his monthly payments.  *Id*. at PageID.18.  SPS advised Fuller that to become eligible, he needed "to skip" two payments and then submit an application for a loan modification.  *Id*.  Fuller stated that, "any skipped payments that accrued while obtaining my loan modification would then be put on the tail end of the mortgage once approved for the new loan modification."  *Id*.  Fuller completed a loan modification and faxed it to SPS.  *Id*.

Fuller "requested a meeting as required by MCL § 600.3205a" but "Defendants refuse [sic] to schedule or conduct a meeting." *Id*.  Plaintiffs' reliance on this statute is misplaced, because § 600.3205a was repealed three years before Fuller allegedly requested a meeting.[3]  Plaintiffs allege that instead of providing Fuller "with the promised loan modification," defendant SPS "initiated foreclosure actions."  *Id*.  When Fuller tried to call "the SPS designated relationship manager," Fuller could not reach him on the telephone.  *Id*.  On September 17, 2018, due to the ongoing stress caused by defendants and Fuller's other creditors, Fuller suffered a life-threatening fall down a flight of steps resulting in multiple broken bones in his back, pelvis and ribs.  *Id*.

On October 23, 2018, Fuller called SPS to follow up on his loan modification.  *Id*.  Unable to reach the designated relationship manager, Fuller spoke with Ms. Keena Ferguson "who

[2] Plaintiff Larry Fuller filed a separate lawsuit in state court to postpone the foreclosure of the Kalamazoo real estate which was later removed to this Court, where it was dismissed as meritless.  *See Fuller v. JPMorgan Chase Bank, N.A.*, No. 1:19-cv-482, 2019 WL 5586906 (W.D. Mich. Oct. 30, 2019) (sometimes referred to as "*Fuller*" or "case 482").  The *Fuller* complaint included many of the same allegations as the present case. The Sixth Circuit dismissed Fuller's appeal as untimely.  *See Fuller v. JPMorgan Chase Bank, N.A.*, No. 20-1442, 2020 WL 4673339 at *1 (6th Cir. July 13, 2020) (noting that "After Larry Wayne Fuller's fourth bankruptcy action was dismissed, he filed a state-court action on May 17, 2019, to further postpone foreclosure on his real property. . . On October 30, 2019, the district court entered a final order granting the motions and dismissing the action with prejudice. Any notice of appeal was due to be filed on or before November 29, 2019. The notice of appeal filed on May 11, 2020, is late.").

[3] *See* P.A. 2012, No. 521, effective June 30, 2013.

2

reaffirmed the promise of the SPS customer representative, on or about, August 2016, that the skipped payments that accrued while obtaining Plaintiff's, Larry Fuller, loan modification." *Id*. at PageID.18-19.  Ms. Ferguson requested Fuller to submit another loan modification application. *Id*. at PageID.19.  On that same day, "SPS confirmed that they did indeed receive Plaintiff's complete loan modification application." *Id*.

On November 6, 2018, Fuller called SPS. *Id*. "Unable to reach the designated relationship manager," plaintiff spoke with Pedro Matao who confirmed that SPS received the loan modification application and that his application was pending review for approval.  *Id*. Mr. Matao also advised Fuller that "even though his loan modification was in active review SPS had a foreclosure sale date set for December 6, 2018 on his home." *Id*. On or about December 14, 2018, Fuller called SPS again to follow up on his loan modification and learned for the first time during this call that SPS denied his loan modification application and scheduled a foreclosure sale date on his home for December 20, 2018.  *Id*.  While Fuller refers to the Saugatuck property as "his home," there is no allegation that he lives on the property; Fuller identifies himself as "a resident of Kalamazoo County, Michigan at 530 West South Street, Kalamazoo, Michigan 49007." *Id*. at PageID.16.  Defendants "have not contacted property owner Plaintiff Christine Skandis and advised her that they intend to foreclose on her property." *Id*. at PageID.19.

On December 19, 2018, Fuller and Skandis filed this lawsuit in the 48th Circuit Court, Allegan County, Michigan, against defendants SPS, Chase and Orlans.  *See* Compl. (ECF No. 1-1).  Plaintiffs identify Chase as a bank, SPS as a business, and Orlans as "a law firm that engages in mass foreclosure actions in the state of Michigan." *Id*. at PageID.16.  Plaintiffs alleged 15 counts related to the foreclosure of the real estate in Saugatuck: Michigan's foreclosure by advertisement statute (Count 1); Michigan's statutory modification law (Count 2); Civil conspiracy

(Count 3); Declaratory relief- Foreclosure barred by unclean hands (Count 4); Breach of contract-Implied duty of good faith and fair dealing (Count 5); Accounting (Count 6); Intentional fraud (Count 7); Constructive fraud (Count 8); Violation of Michigan's regulation of collection practices act (Count 9); Count 10 is omitted; Violations of state law prohibiting unfair and deceptive consumer practices with respect to loan servicing (Count 11);  Promissory Estoppel (Count 12); Fraud (Count 13); Intentional infliction of emotional distress (Count 14);  Violation of RESPA Claim under 12 C.F.R. § 1024.41 (Count 15); and, Temporary and preliminary injunctive relief (Count 16).  Compl. (ECF No. 1-1, PageID.15-40).

The Chase defendants removed the case to this district on January 14, 2019, based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  *See* Notice of Removal (ECF No. 1).  Although plaintiffs and defendant Orlans are residents of Michigan, SPS and Chase contend that there is complete diversity in this case because plaintiffs fraudulently joined defendant Orlans to this lawsuit.  *Id*.

## II.    Defendants' motions to dismiss (ECF Nos. 9 and 11)

### A.    Legal Standard

Defendants seek dismissal pursuant to Fed. R. Civ. P. Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts

4

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).  In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).  Thus, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678.    Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

## B.    Defendant Orlans (ECF No. 9)

Plaintiffs' allegations against defendant Orlans arise from law firm's involvement as Orlans' action as the foreclosure counsel for defendants SPS and Chase.  Defendant Orlans contends that it was fraudulently joined as a defendant in this action.  The Court agrees.  In *Conlin v. Mortgage Electronic Registration Systems, Inc.*, No. 11-15352, 2011 WL 6440705 at *1 (E.D. Mich. Dec. 16, 2011), the court rejected the mortgagor's attempt to contest a mortgage foreclosure by suing the mortgagee's attorneys, stating in pertinent part:

> This court has diversity jurisdiction in this matter only if it disregards Orlans Associates, P.C., and Marshall Isaacs as fraudulently joined.  A party is "nominal" and its citizenship is disregarded for purposes of determining diversity if a plaintiff cannot establish a cause of action against that party under state law.  *See Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999).  In cases challenging

5

mortgage foreclosures such as this one, a plaintiff does not have a cause of action against foreclosure counsel, who serves as an agent for the bank. Here, Orlans Associates, P.C., and Marshall Isaacs served as agents for U.S. Bank. Plaintiff's state law claims, if any, are against the principal, U.S. Bank, not the agents. *See Estate of Jerry Malloy v. PNC Bank*, 2011 WL 4485088 (E.D. Mich. Sept.27, 2011) (Edmunds, J.) (no claim against foreclosure counsel); *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 402–403, 729 N.W.2d 277 (2006) (attorneys owe no legal duty to adverse party under Michigan law). Accordingly, the court finds that Orlans Associates and Isaacs were fraudulently joined and that it has diversity jurisdiction. *See Malloy, supra*, at *1; *Yuille v. Trott and Trott, P.C.*, No. 11–10584, at 2–23 (E.D. Mich. March 30, 2011) (Friedman, J.).

*Conlin*, 2011 WL 6440705 at *1. *See Morton v. Bank of America, N.A.*, No. 1:12-cv-511, 2013 WL 3716841 at *8 (W.D. Mich. July 12, 2013) ("The federal courts of this State have consistently rejected claims by mortgagors against law firms representing mortgage companies in cases alleging wrongful foreclosure."). Accordingly, defendant Orlans' motion to dismiss should be granted as to all claims.

### C.    Claims barred by the statute of Frauds

### 1.    Michigan's statute of frauds

The Chase defendants contend that plaintiffs' entire complaint is barred by Michigan's statute of frauds, M.C.L. § 566.132, which provided in pertinent part as follows:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
>     (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
>     (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
>     (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

6

This Court addressed a nearly identical situation in *Fuller*, concluding that an alleged promise to provide a loan modification was barred by Michigan's statute of frauds, stating that:

> This provision applies to actions against financial institutions based upon a promise to modify a loan and is " 'unambiguous.' " *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *3 (W.D. Mich. Mar. 25, 2011) (quoting *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000)). Moreover, it applies to any "claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech.*, 242 Mich. App. at 550, 619 N.W.2d at 72. Thus, Fuller's allegation that a representative of Chase told him that he would receive a loan modification if he skipped his monthly mortgage payments is subject to dismissal.

*Fuller*, 2019 WL 5586906 at *5-6. *See also, Vittands v. Bank of America*, NA, No. 11-CV-15241, 2012 WL 1696708 at *4 (E.D. Mich. May 15, 2012) ("Attempting to enforce a financial institution's promise regarding a loan modification requires a written instrument signed by the party against whom enforcement is sought. Mich. Comp. Laws § 566.132(2)(b).").

In this regard, the Sixth Circuit has explained that Michigan's statute of frauds precludes all actions against financial institution which are based on an oral promise:

> [T]o the extent the [plaintiffs] argue that the Bank orally promised to modify their loan, the claim is subject to the statute of frauds. Michigan's statute of frauds provides, in pertinent part, that "an action shall not be brought against a financial institution . . . unless the promise or commitment is in writing and signed with an authorized signature by the financial institution." Mich. Comp. Laws § 566.132. This includes promises or commitments "to lend money, [ ] to modify [a loan], or permit a delay in repayment or performance of a loan, . . . [or] to waive a provision of a loan." *Id*. Michigan courts have interpreted the provision liberally, instructing that the "unambiguous" statute "preclude[s] all actions for . . . promises and commitments" that are based on an oral promise. *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich.App. 538, 619 N.W.2d 66, 72 (2000). The [plaintiffs] base this claim, and the majority of their other claims, on the Bank's alleged oral promise to modify their loan.

*Smith v. Bank of America Corp.*, 485 Fed. Appx. 749, 753 (6th Cir. 2012). *See also*, *Blackward Properties, LLC v. Bank of America*, 476 Fed. Appx. 639, 641-42 (6th Cir. 2012) (the Michigan

statute of frauds "amounts to 'an unqualified and broad ban' and bars '*all* actions for the enumerated promises and commitments, including actions for promissory estoppel'").

### 2. Breach of contract - Implied duty of good faith and fair dealing (Count 5)

In this Count, plaintiffs allege that defendants breached the implied covenant of good faith and fair dealing in the pre-foreclosure loss mitigation period. Compl. at PageID.25-26. This claim fails for two reasons. First, "Michigan law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself." *Fuller v. JPMorgan Chase Bank, N.A.*, No. 1:19-cv-482, 2019 WL 5586906 at *4 (W.D. Mich. Oct. 30, 2019) (*citing Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 35, 718 N.W.2d 827 (2006). Second, this claim is barred by Michigan's statute of frauds because it is based on an oral promise to modify the loan. Accordingly, plaintiffs' Count 5 should be dismissed.

### 3. Promissory estoppel (Count 12)

In this Count, plaintiffs frame their breach of contract claim as one for promissory estoppel, alleging that: in August 2016 defendant SPS called Fuller requesting that he not make monthly mortgage payments; that by doing so Fuller could qualify for a loan modification; that Fuller submitted the requested loan modification application; that Fuller was not able to reach the SPS designated relationship manager on the telephone; that Fuller believed defendants were acting in good faith and processing his loan modification "as promised July 2016" [sic]; and, that on or about December 14, 2018, SPS told Fuller "that they would not improve approve [sic] his loan modification and would be foreclosing on his home on December 20, 2018." Compl. at PageID.32.

A claim of promissory estoppel is an equitable remedy and requires that there be "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of promisee, (3)

which in fact produced reliance or forbearance . . . , and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Ardt v. Titan Ins. Co.*, 233 Mich. App. 685, 692, 593 N.W. 2d 215, 219 (1999). "The promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008) (citing *Ypsilanti Twp. v. Gen. Motors Corp.*, 201 Mich. App. 128, 134, 506 N.W.2d 556, 559 (1993) (per curiam)).

*Fuller*, 2019 WL 5586906 at *7.

This claim fails for two reasons. First, plaintiffs have failed to demonstrate the elements of promissory estoppel. The alleged request made to Fuller in July or August of 2016 was not a "definite and clear" promise to grant him a loan modification. At most, the communication between SPS and Fuller involved an offer to review a loan modification if Fuller submitted one, not an agreement to give him a loan modification. According to the allegations in the complaint, the review occurred and the modification was denied. In this regard, Fuller's reliance on the alleged promise was unreasonable. In the Court's opinion, it is not reasonable for a borrower to stop paying loan payments for over two years (*i.e.*, from August 2016 through December 2018) and expect to receive a loan modification. Second, this claim is barred by Michigan's statute of frauds because it is based on an oral promise to modify the loan. Accordingly, plaintiffs' Count 12 should be dismissed.

### 4. Plaintiffs' remaining claims

The expansive language used in *Smith* and *Blackward Properties* could conceivably support the dismissal of all of plaintiffs' claims under the statute of frauds, because every claim in this lawsuit arises from an alleged oral promise to provide Fuller with a loan modification. However, the Chase defendants have failed to adequately brief that issue as it applies to plaintiffs' remaining claims which are brought under Michigan common law, Michigan statutes, and a Federal statute. Accordingly, this report will address plaintiffs' remaining claims.

**D.    Michigan's foreclosure by advertisement statute (Count 1) and Michigan's statutory modification law (Count 2)**

In Count 1, plaintiffs allege that defendants must file a judicial foreclosure pursuant to M.C.L. § 600.3204 and 600.3205c(7).   Compl. (ECF No. 1-1, PagID.19-21).   Then, in Count 2, plaintiffs allege that defendants violated portions of M.C.L. § 600.3205a(1).   *Id.* at PageID.21-23).   Both of plaintiffs' claims contend that SPS and Chase violated MCL § 600.3205c.   Compl. at PageID.19-23.   Plaintiffs' Counts 1 and 2 fail to state causes of action, because both counts are based on defendants' alleged non-compliance with MCL § 600.3205, which was repealed in 2013. Plaintiffs cannot rely on these statutes because they did not exist during the relevant time period of this action.  *See Hardwick v. HSBC Bank USA, N.A.*, No. 310191, 2013 WL 3815632, at *2 (Mich. App. July 23, 2013) ("[T]he Michigan Legislature has repealed [MCL §§ 600.3205a-600.3205d]  .  .  .  effective June 30, 2013. [MCL § 600.3205e.] Thus, even if plaintiffs had possessed standing to pursue this action, the issues in this case are now moot because neither the circuit court nor this Court can fashion the relief that plaintiffs seek on appeal . . . .")

This Court addressed the same issue in dismissing nearly identical claims in *Fuller*:

> Moreover, Counts 1, 2, and 4 hinge entirely upon Fuller's assertion that Chase failed to comply with M.C.L. § 600.3205, which precluded a foreclosure if the lender had not, under certain circumstances, determined whether the mortgagor qualified for a loan modification.  Fuller's reliance on this statutory provision fails for the simple reason that the Michigan legislature repealed M.C.L. §§ 600.3205a to 600.3205d effective June 30, 2013, and repealed M.C.L. § 600.3205 effective June 19, 2014—long before Chase foreclosed the Mortgage.  *See Mandingo v. PNC Bank N.A.*, No. 2:15-cv-12079, 2017 WL 914026, at *3 (E.D. Mich. Mar. 8, 2017) ("As an initial observation, the Court notes that the Sheriff's Deed contains no reference to Mich. Comp. Laws. § 600.3205, which was repealed nearly one year before PNC published the deed.  .  .  .  Thus [the plaintiff's] claim related to Mich. Comp. Laws § 600.3205 fails as a matter of law."); *Lock v. Bank of Am.*, No. 14-13223, 2015 WL 1637493, at *4 (E.D. Mich. Apr. 13, 2015) ("In the matter at hand, Defendant's foreclosure on Plaintiff's home took place on July 8, 2014, over a year after the effective repeal date of MCL 600.3205c and several weeks after the repeal date of MCL 600.3205. Therefore, Plaintiff's Counts I and II fail as a matter of law.").

*Fuller*, 2019 WL 5586906 at *4.  Plaintiffs have no rights to assert under M.C.L. § 600.3205 *et seq*.  Accordingly, plaintiffs' Counts 1 and 2 should be dismissed.

### E.    Civil conspiracy (Count 3)

In this Count, plaintiffs allege that defendants conspired: to breach the mortgage; to breach the note; "to commit torts of fraud and/or constructive fraud"; and "to violate the Michigan and Federal Fair Debt Collection Practices Act and/or the various other torts alleged within the Counts contained within this Complaint, for the improper purpose of forcing Plaintiffs into foreclosure as soon as possible."  *Id*. at PageID.23-24.  " '[A] claim for civil conspiracy may not exist in the air; it is necessary to prove a separate, actionable tort.' "  *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) (quoting *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 631, 403 N.W.2d 830 (1986)).  For the reasons set forth in this report, plaintiffs have not alleged a cause of action for any fraud or other torts which could give rise to a cause of action for civil conspiracy.  Accordingly, plaintiffs' Count 3 should be dismissed.

### F.    The foreclosure is barred by unclean hands (Count 4)

In this Count, plaintiffs allege a cause of action under the "clean hands doctrine," stating that "[a]lthough Defendants seek the equitable relief of foreclosure by advertisement, Defendants cannot make the requisite showing of clean hands in order to obtain such relief."  Compl. at PageID.24.  "[T]he clean hands doctrine is an equitable defense, not a cause of action."  *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 911 (E.D. Mich. 2012) (citing *Heritage Broadcasting Co. v. Wilson Communications, Inc.*, 170 Mich. App. 812, 819, 428 N.W.2d 784, 787 (1988)).  Accordingly, plaintiffs' Count 4 should be dismissed.

### G.   Accounting (Count 6)

In this Count, plaintiffs allege that defendants had "the obligation to account for any and all payments made by Plaintiff in order to provide a basis for the amount claimed to be due and owing in order to avoid foreclosure."  Compl. at PageID.26.  Plaintiffs seek a determination of payments applied and payments due under their promissory note.  *See* Compl. at PageID.26 (stating at ¶ 106 that  "[a]s a result of the foregoing, Defendants owe Plaintiff [sic] the obligation to account for any and all payments made by Plaintiff [sic] in order to provide a basis for the amount due and owing in order to avoid foreclosure" and stating at ¶ 107 that "Defendants owe Plaintiff  [sic] the obligation to account for any and all funds in Plaintiffs [sic] escrow account in order to provide a basis for the amount claimed to be due and owing in order to avoid foreclosure").

Plaintiffs' claim fails "because an accounting is not proper where either the parties' contractual agreement or discovery is sufficient to determine the amounts at issue." *Fuller*, 2019 WL 5586906 at *4 (internal quotation marks omitted).  Here, plaintiffs' alleged damages can be determined from the loan documents and payment records.  As this Court previously advised Fuller, "an accounting is not proper because the amount owing on the loan can be determined based on loan documents."  *Id*.  There is no basis to invoke this Court's equitable powers to order an accounting in this case.  Accordingly, plaintiffs' Count 6 should be dismissed.

### H.   Intentional fraud (Count 7), Constructive Fraud (Count 8), and Fraud (Count 13)

In Count 7, plaintiffs allege that defendants engaged in a conspiracy to intentionally defraud them with "tricking him [sic] into foreclosure."  *Id*. at PageID.26-28.  In Count 8, plaintiffs allege, in the alternative to fraud, that defendants engaged in constructive fraud, *i.e.*, defendants made representations "without a purposeful design to defraud Plaintiffs" but the representations

were false and "induced Plaintiffs to participate in the transaction on the one hand, and to refrain from exercising rights on the other, to his [sic] detriment." *Id*. at PageID.28-29.

Finally, in Count 13, plaintiffs allege "fraud" claiming that "Defendants made a false representation when, on or about July 2016, Defendant SPS called Plaintiff requesting he skip his monthly mortgage payments so that he could qualify for a loan modification", that "it appears as though Defendants intended Plaintiff to rely on their assertions and intended that he rely on their promises of their solicitations to skip his mortgage payment for a loan modification," and that plaintiff (Fuller) "followed the instruction of SPS to skip monthly payments to qualify for the SPS's promised loan modification." *Id*. at PageID.34.  The Court notes that plaintiffs' fraud claim changed the alleged timeline, by stating that the oral promise to modify the loan was made on an unidentified date in July 2016 rather than an unidentified date in August 2016.

This Court identified three nearly identical fraud claims in *Fuller*, stating in pertinent part:

> In Counts 7, 8, and 13, Fuller alleges claims for intentional fraud, constructive fraud, and fraud. The Court considers Count 13 duplicative of Count 7 but will analyze all three claims together. The premise of Fuller's fraud claims is that Defendants made misrepresentations to him in order to trick him into foreclosure in order to obtain a windfall. Fuller alleges that the misrepresentations concerned his payments.
>
> In order to state a claim for fraud, a plaintiff must allege that: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 26-27, 585 N.W.2d 33, 36 (1988). Under Michigan law, a claim for constructive fraud is actual fraud without the element of intent. *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 913 (E.D. Mich. 2012).

*Fuller*, 2019 WL 5586906 at *5.

Plaintiffs' fraud claims are subject to the pleading requirements of Fed. R. Civ. P. 9, which provides that:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Under Fed. R. Civ. P. 9, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State District Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (internal quotation marks omitted).

Here, plaintiffs' vague and conclusory allegations fail to meet the requirements for alleging fraud Fed. R. Civ. P. 9.  While plaintiffs refer to subsequent conversations with Ms. Ferguson and Mr. Matao regarding the status of Fuller's loan modification, they do not provide a specific date that the original misrepresentation was made (at times alleging that the promise or misrepresentation occurred in July 2016, and other times alleging that it occurred in August 2016) and do not identify a specific person who made the promise or misrepresentation.

Furthermore, plaintiffs' claims fail because they do not plead the first element of a fraud claim, *i.e.*, that a defendant made a material misrepresentation.  Here, plaintiffs allege that an unknown person promised to give Fuller a loan modification.  Under Michigan law, "[f]uture promises cannot form the basis for a fraud claim." *Molotky v. Wells Fargo Bank, N.A.*, No. 1:15-CV-769, 2018 WL 2197736 at *6 (W.D. Mich. April 13, 2018).  *See Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976) ("[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing

14

fact. Future promises are contractual and do not constitute fraud.").   Accordingly, plaintiffs' Counts 7, 8 and 13 should be dismissed.

## I.    Violation of Michigan's regulation of collection practices act (Count 9)

In this count, plaintiffs allege that defendants violated Michigan's Regulation of Collection Practices Act (MRCPA), M.C.L. § 445.251 *et seq*.  Compl. at PageID.29.  The gist of plaintiffs' claim is that defendants communicated with them in a misleading or deceptive manner.  *See id*. at PageID.29-30.   Plaintiffs' claims do not describe any particular incident.   Rather, plaintiffs recite the elements of the MRCPA and allege that defendants violated the statute.  *See, e.g.*, ¶ 129 ("Defendants' communications were made in connection with debt collection because they were made specifically to induce Plaintiff [sic] to settle Plaintiffs [sic] debt, offered to discuss Plaintiffs [sic] repayment options, and/or made explicit demands for payment from Plaintiff [sic]." *Id*. at PageID.30.

This Court rejected a nearly identical claim for a MRCPA violation in *Fuller*:

> Fuller alleges that Defendants violated Michigan's Regulation of Collection Practices Act (MRCPA) in various ways. Rather than alleging facts, Fuller parrots various prohibited acts set forth in Section 2 of the MRCPA, M.C.L. § 445.252. Fuller alleges no fact indicating how Defendants violated MRCPA. Such "vague and conclusory allegations" are insufficient to state a claim that a defendant violated the MRCPA. *Griffin v. JPMorgan Chase Bank, N.A.*, No. 2:13-cv-10002, 2013 WL 6587870, at *5 (E.D. Mich. Dec. 16, 2013).  Moreover, to the extent Fuller relies on loan modification discussions or communications about foreclosure to support his claim, his claim must fail because such communications do not fall within the scope of the MRCPA.  *See Edgerton v. Nationstar Mortg., LLC*, No. 18-12020, 2018 WL 7680610, at *10 (E.D. Mich. Dec. 31, 2018), Rep. and Recommendation adopted, 2019 WL 1011108 (E.D. Mich. Mar. 4, 2019).

*Fuller*, 2019 WL 5586906 at *7.  The Court's reasons for rejecting the MRCPA claim alleged in *Fuller* applies with equal force in this case.  Accordingly, plaintiffs' Count 9 should be dismissed.

**J.      Violations of state law prohibiting unfair and deceptive consumer practices with respect to loan servicing (Count 11)**

In this Count, plaintiffs allege that, "Defendants had a duty to properly obey the CONSUMER MORTGAGE PROTECTION ACT Act [sic] 660 of 2002 [M.C.L. §§ 445.1631-445.1645] of the state and county where Plaintiff's property resides by failing to do so violated state law prohibiting unfair and deceptive consumer practices with respect to loan servicing." *Id.* at PageID.30-31. The Court rejected a nearly identical claim in *Fuller*:

> In Count 11, Fuller alleges that Defendants violated the Michigan Consumer Mortgage Protection Act, M.C.L. § 445.1634. This claim fails because "the Act does not provide a private cause of action." *Dickinson v. Countrywide Home Loans, Inc.*, No. 1:10-CV-668, 2012 WL 163883, at *5 (W.D. Mich. Jan. 19, 2012) (internal quotation marks omitted); *Wiggins v. Nationstar Mortg. LLC*, No. 14-cv-12680, 2015 WL 4967137, at *6 n.2 (E.D. Mich. Aug. 20, 2015) (noting that the Consumer Mortgage Protection Act provides no private cause of action, but "only for enforcement by the commissioner [of insurance and financial services], the attorney general or a county prosecutor" (citations omitted)).

*Fuller*, 2019 WL 5586906 at *7. The Court's reasoning in *Fuller* is applicable to plaintiffs' nearly identical Count 11 alleged in the present case. Accordingly, plaintiffs' Count 11 should be dismissed.

**K.      Intentional infliction of emotional distress (Count 14)**

In this Count, plaintiff Fuller alleges that the constant stress, fear and disruption cause him to suffer a life-threatening fall. *Id*. at PageID.35-37.[4] The Court rejected a nearly identical claim in *Fuller*:

> In Count 14, Fuller alleges a claim of intentional infliction of emotional distress, based on Chase's conduct in foreclosing the Mortgage. The elements of an intentional infliction of emotional distress claim are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 N.W.2d 273, 276 (2004). "The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[4] The Court notes that plaintiff Skandis does not any similar allegations with respect to intentional infliction of emotional distress.

regarded as atrocious and utterly intolerable in a civilized community.' " *Id*. at 577, 686 N.W.2d at 276-77 (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999). A defendant may not be held liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *See Lewis v. LeGrow*, 258 Mich. App. 175, 196, 670 N.W.2d 675, 689 (2003).

Fuller's claim fails because his allegations fail to show extreme or outrageous conduct by Chase or any other Defendant. Instead, Chase and the other Defendants engaged in conduct that is common when a lender attempts to work out, and eventually forecloses on, a delinquent mortgage loan. Moreover, "in Michigan, the extreme and outrageous standard is not satisfied when the plaintiff essentially claims that the defendant breached contracts with him in various ways and foreclosed on his property." *Dahl v. First Franklin Loan Servs.*, No. 13-13599, 2014 WL 6686769, at *8 (E.D. Mich. Nov. 26, 2014) (internal quotation marks and brackets omitted). Such is the case here.

*Fuller*, 2019 WL 5586906 at *8.

The Court's reasoning in *Fuller* is applicable to the present case. Other courts have rejected claims similar claims for emotion distress arising from a mortgage foreclosure. As one court explained:

Under Michigan law, damages for emotional distress are not recoverable in breach of contract or foreclosure actions. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 415 (1980); *Robbins v. Mortgage Elec. Registration Sys., Inc.*, No. 1:09-CV-295, 2009 WL 3757443, at *8 (W.D. Mich. Nov. 9, 2009). Since [the plaintiff's] infliction of emotional distress claim is based on his contractual relationship with [the bank], his infliction of emotional distress will be dismissed for failure to state a claim.

*Mowett v. JPMorgan Chase Bank*, No. 15-12612, 2016 WL 1259091 at *5 (March 31, 2016), *modified on reconsideration*, 2016 WL 4475014 (E.D. Mich. Aug. 25, 2016). *See also, Springs v. United States Department of Treasury*, 567 Fed. Appx. 438, 449 (6th Cir. 2014) (observing that "the initiation and acceleration of lawful foreclosure proceedings is not the type of conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community") (internal quotation marks omitted). Accordingly, plaintiffs' Count 14 should be dismissed.

### L.    Violation of RESPA claim under 12 C.F.R. § 1024.41 (Count 15)

In this Count, plaintiffs allege that defendants violated 12 C.F.R. §§ 1024.38 and 1024.41, and they seek to enforce these violations under the Real Estate Settlement Procedures Act ("RESPA"),12 U.S.C. § 2605(f). [5]  *Id*. at PageID.37-38.   In this regard, plaintiffs cite § 1024.41, which provides that "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."  For their relief, plaintiffs ask the Court "to order Defendant [sic] to conduct a proper evaluation of Plaintiff's loan for modification," and then award damages "including emotional damages, elimination of all arrearage added to loan, costs, attorney fees, the fair market value of home, and down payment."  *Id*. at PageID.37-38.  In their request for relief, plaintiffs ask the Court to "Enter a Temporary Restraining Order preserving the status quo, by restraining the sale of Plaintiff's [sic] Property through trial" and to "Convert the instant action to a judicial foreclosure."  *Id*. at PageID.38.

Plaintiffs appear to allege a violation of § 1024.38.  Their conclusory allegations do not allege how defendants violated that regulation.  *Id*. at PageID.37-38.  Even if plaintiffs had alleged specific violations, their claim fails because § 1024.38 does not confer a private enforceable right of action.  *See Carter v. CrossCountry Mortgage, Inc.*, No. 18-12714, 2019 WL 3958275 at *5 (E.D. Mich. Aug. 21, 2019).

Furthermore, plaintiffs cannot bring an action for equitable relief under 12 U.S.C. § 2605(f).  In *Servantes v. Caliber Home Loans, Inc.*, No. 14-CV-13324, 2014 WL 6986414 (E.D. Mich. Dec. 10, 2014), the Court dismissed a similar RESPA claim, stating in pertinent part:

---

[5] The relevant section, 12 U.S.C. § 2605(f)(1)(A) and (B), provides in pertinent part that, "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: . . . In the case of any action by an individual, an amount equal to the sum of-- (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."

[T]he Court dismisses count three, alleging that Defendant violated the Real Estate Settlement Procedures Act (RESPA) by prematurely abandoning the loss mitigation process with Plaintiffs in violation of 12 C.F.R. § 1024.39-41, because the principal relief sought by Plaintiffs—to stay or set aside the sheriff's sale or, alternatively, to permit the matter to proceed to judicial foreclosure—is unavailable to them under RESPA. *See* 12 C.F.R. § 1024.41 (providing that the provisions this section may be enforced under 12 U.S.C. § 2605(f)); 12 U.S.C. § 2605(f) (authorizing monetary damages only; specifically, actual damages resulting from RESPA violation and, in the case of "a pattern or practice of noncompliance," statutory damages not to exceed $2000). To the extent Plaintiffs may wish to proceed with a RESPA claim for monetary damages only, the Court dismisses the claim because Plaintiffs have not alleged that Defendant's alleged violations of 12 C.F.R. § 1024.39-41 resulted in actual damages, *see Drew v. Kemp-Brooks*, 802 F.Supp.2d 889, 898 (E.D.Mich.2011) (to successfully plead RESPA violation under § 2605(f), plaintiff must allege actual damages resulting from the RESPA violation), and Plaintiffs have not pled "a pattern or practice of noncompliance."

*Servantes*, 2014 WL 6986414 at *1.  Accordingly, plaintiffs' Count 15 should be dismissed.

## M.     Temporary and preliminary injunctive relief (Count 16)

In this Count, plaintiffs seek injunctive relief to delay the foreclosure of the Saugatuck property, asking "that this Court enter a Temporary Restraining Order preserving the status quo, by restraining the sale of the Property, and continuing the temporary restraining order through trial, without which [sic] will continue to cause Plaintiff irreparable harm." *Id*. at PageID.38-40. There is no record of that the 48th Circuit Court issued a temporary injunction and plaintiffs have filed no motions seeking injunctive relief since removal of the case to this Court. *See* Fed. R. Civ. P. 65.

The Court rejected a similar count for injunctive relief in *Fuller*, stating in pertinent part

In Count 15, Fuller alleges a claim for preliminary and injunctive relief. However, injunctive relief is a remedy, not a cause of action. *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016). Regardless, such relief is appropriate only where the circumstances demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Injunctive relief is not appropriate in this case because Fuller has shown no likelihood of success. *See Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) (noting that "a preliminary injunction issued where

there is simply no likelihood of success on the merits must be reversed"). Because all of Fuller's claims fail as a matter of law, there is no basis for issuance of injunctive relief.

Fuller, 2019 WL 5586906 at *9.

There is no basis for issuing injunctive relief because plaintiffs' claims are without merit. In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998). Because all of plaintiffs' claims fail as a matter of law, there is no likelihood or probability of success on the merits. Accordingly, plaintiffs' Count 16 should be dismissed.

### III.    RECOMMENDATION

For these reasons, I respectfully recommend that defendants' motions to dismiss (ECF Nos. 9 and 11) be **GRANTED** and that this action be **DISMISSED**.


Dated:  March 2, 2021                            /s/ Ray Kent
                                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).